# EXHIBIT 6

# AGREEMENT

# BETWEEN

MY BENEFITS GROUP, INC.

# BARGAINING ASSOCIATION

# AND

# PRODUCTION WORKERS UNION, LOCAL 30

**EFFECTIVE** SEPTEMBER 1, 2010

**EXPIRE** AUGUST 31, 2012

PL198

## TABLE OF CONTENTS

A G R E E M E N T ....................................................................................................1

W I T N E S S E T H: ..............................................................................................1

ARTICLE I - BARGAINING UNIT .........................................................................1
    SECTION 1. EMPLOYER DEFINED:...............................................................1
    SECTION 2. EMPLOYEE DEFINED:...............................................................1
    SECTION 3. EXCLUSIVE BARGAINING REPRESENTATIVE: ........................1
    SECTION 4. UNION REPRESENTATIVE:.........................................................2
    SECTION 5. RECORDS: ...................................................................................2
    SECTION 6 BARGAINING UNIT:......................................................................2

ARTICLE II - RECOGNITION ...............................................................................2

ARTICLE III - UNION SHOP .................................................................................2

ARTICLE IV - CHECK OFF ...................................................................................3

ARTICLE V - HOURS OF WORK...........................................................................4
    SECTION 1. OVERTIME WORK. ......................................................................4
    SECTION 2. OVERTIME PAY............................................................................4
    SECTION 3. SUNDAY WORK. ..........................................................................4
    SECTION 4. NOTICE OF OVERTIME.:.............................................................4
    SECTION 5. WORK SCHEDULES.:...................................................................4
    SECTION 6. REPORTING PAY..........................................................................5

ARTICLE VI - PAID HOLIDAYS ............................................................................5
    SECTION 1. HOLIDAYS DESIGNATED. ...........................................................5
    SECTION 3. HOLIDAY PAY.:.............................................................................6
    SECTION 5. LAYOFF OR LEAVES. ..................................................................6

ARTICLE VII - VACATIONS ..................................................................................7
    SECTION 1. ELIGIBILITY....................................................................................7

PL199

SECTION 2.  VACATION PAY. ...............................................................7
SECTION 3.  VACATION PAY IN EVENT OF TERMINATION. ..........................8


**ARTICLE VIII - GRIEVANCE PROCEDURE** ...........................................8
SECTION 1. DEFINITION. ...................................................................8
SECTION 2.  ARBITRATION. ...............................................................10
SECTION 3.  LIMITATIONS:  TIME AND PLACE. .....................................10


**ARTICLE IX - SENIORITY** ...................................................................10
SECTION 1.  LEAVE OF ABSENCE ......................................................10
SECTION 2.  COMMENCEMENT. .........................................................12
SECTION 3.  TERMINATION. ...............................................................12
SECTION 4.  PROBATIONARY EMPLOYEES. .........................................12
SECTION 5.  APPLICATION. ................................................................13
SECTION 6.  SENIORITY LIST. ............................................................13
SECTION 7.  MATERNITY LEAVE OF ABSENCE ....................................13
SECTION 8. SENIORITY APPLICATION. ...............................................14
SECTION 9.  JOB OPPORTUNITIES. .....................................................14


**ARTICLE  X - POLITICAL  ACTION  COMMITTEE** ...................................14


**ARTICLE XI - MISCELLANEOUS PROVISIONS** ......................................14
SECTION 1.  UNION ACCESS. ............................................................14
SECTION 2.  WORK BY SUPERVISORS. ...............................................15
SECTION 3.  DESIGNATED UNION REPRESENTATIVE. ...........................15
SECTION 4.  NOTICES. .....................................................................15
SECTION 5.  CHANGE IN LOCATION ET. AL. ........................................15
SECTION 6.  PAY FOR INJURY IN THE COURSE OF EMPLOYMENT. ..........16
SECTION 7.  NO LOSS OF EXISTING BENEFITS. ...................................16
SECTION 8.  SUCCESSORS & ASSIGNS. ..............................................16
SECTION 9.  SAFETY AND HEALTH. .....................................................16
SECTION 10.  NON-DISCRIMINATION. ...................................................17
SECTION 11. JURY DUTY PAY. ............................................................17
SECTION 12.  CONDOLENCE PAY. ........................................................17
SECTION 13.  NATIONAL ELECTION DAYS. ............................................17
SECTION  14.  GRACE PERIOD. ...........................................................18
SECTION  15.  TRANSFER OUT OF BARGAINING UNIT. ............................18
SECTION  16.  GENDER CLAUSE. .........................................................18


**ARTICLE XII - HEALTH AND WELFARE FUND** ......................................19

ii

ARTICLE XIII - SICK & ACCIDENT BENEFITS .................................................................22

ARTICLE XIV - LIFE INSURANCE .................................................................22

ARTICLE XV - RETIREMENT BENEFITS .................................................................23

ARTICLE XVI - PENSION FUND .................................................................23

ARTICLE XVII - UNION PAYROLL INSPECTION .................................................................26

ARTICLE XVIII - LIQUIDATED DAMAGES .................................................................26

ARTICLE XIX NO STRIKES OR LOCKOUTS .................................................................27
      SECTION 4. NO LOCKOUT. .................................................................28
      SECTION 5. DELINQUENCIES. .................................................................29

ARTICLE XX- WAGES .................................................................29
      SECTION 1. WAGE SCHEDULE.: .................................................................29
      SECTION 2. WAGE DEDUCTIONS.: .................................................................29
      SECTION 3. WAGE INCREASE: .................................................................30
      SECTION 4. MERIT INCREASE OR BONUS: .................................................................30

ARTICLE XXI - LABOR MANAGEMENT LAW .................................................................30
      SECTION 1. LABOR MANAGEMENT LAW. .................................................................30
      SECTION 2. SAVINGS CLAUSE. .................................................................31

ARTICLE XXII– MANAGEMENT RIGHTS. .................................................................31

ARTICLE XXIII - TERMINATION .................................................................32

iii

PL201

# A G R E E M E N T

THIS AGREEMENT, made and entered into this _____1st_____ day of _Sept-_
_ember___, 2010 by and between _____My Benefits Group Inc._ Bargaining
Association, (hereinafter referred to as "Association") for itself and on behalf of its
current members and any other members that join the Association in the future, and
Production Workers Union, Local 30 (hereinafter referred to as "Union") for itself and
on behalf of the employees now employed and hereinafter employed by the members
of the association.

## W I T N E S S E T H:

The Association and the Union declare that the purpose of this Agreement is to
promote and improve industrial and economic relations between the employees and the
Association and its members.

## ARTICLE I - BARGAINING UNIT

### SECTION 1. EMPLOYER DEFINED:

The term "Employer" shall mean any employer that is a Member of the
Association as defined under the By-Laws of the Association.

### SECTION 2. EMPLOYEE DEFINED:

The term "employee," as used in this Agreement, shall mean the employees of
an Employer as defined in the Employer's Recognition Agreement.

### SECTION 3. EXCLUSIVE BARGAINING REPRESENTATIVE:

Each Employer has recognized the Union as the exclusive bargaining agent for
its employees with reference to wages, hours, working conditions, and benefits.

1

PL202

**SECTION 4. UNION REPRESENTATIVE:**

Each Employer shall recognize and deal with such representatives of its employees as the Union may elect or appoint and shall permit such representative elected or appointed by the Union to visit its place of business during working hours to meet with employees and the Employer, but such visitation shall not cause an interruption of the Employer's operation.

**SECTION 5. RECORDS:**

Each Employer agrees to notify the Union, in writing, of any new hires subject to this Agreement within thirty (30) days of such hire and shall include in the notification the name, home address, wage rate, position, and social security number, and such other information as may be required under the terms of the Employer's Addendum.

**SECTION 6 BARGAINING UNIT:**

This Agreement covers all employees of the Employer, excluding supervisors managers and guards as defined in the National Labor Relations Act.

## ARTICLE II - RECOGNITION

The Association and its member Employers recognize the Union in whatever affiliation it might have as the sole and exclusive collective bargaining agent for all covered employees described in Article I in respect to wage increases, rate of pay, hours of work, and all other conditions of employment to be observed by the parties.

## ARTICLE III - UNION SHOP

It shall be a condition of employment that all employees of Employers of the Association who are members of the Union in good standing on the effective date of this Agreement shall remain members in good standing and those who are not members on

2

the effective date of this Agreement shall, on or after the 30th day following the effective date of this Agreement, become and remain in good standing in the Union. It shall also be a condition of employment that all employees hired on or after the effective date of this Agreement shall, on or after the 30th day following the beginning of such employment, become and remain members in good standing in the Union, unless otherwise prohibited by law.

## ARTICLE IV - CHECK OFF

Each Employer agrees to deduct membership dues, initiation fees and any other obligations an employee may have with the Union from the pay checks of all covered employees on a monthly basis, the first pay period of each month, provided that the Employer has received from each employee, on whose account such deductions are made, an authorization check-off form as required by law, and it will transmit the total amount of such deductions to the Union Office on or before the tenth (10th) day of each month accompanied by forms provided by the Union.

Whenever an employee quits, is discharged, laid off, or his employment is otherwise terminated, any amounts due to the Union will be deducted from the last pay to be made.

A new form is required for any change in status of employee, such as name change, social security number change or change of beneficiary.

3

## ARTICLE V - HOURS OF WORK

### SECTION 1.  OVERTIME WORK.

This Article is intended only to be construed as a basis for overtime and shall not be construed as a guarantee of hours of work per day or per week.  Overtime shall not be paid more than once for the same hours worked.

### SECTION 2.  OVERTIME PAY.

A non-exempt employee shall be paid one and one-half (1-½) times his regular hourly rate of pay for all hours worked by him in excess of forty (40) hours in his work week. For the purpose of computing overtime any paid time off pursuant to the Collective Bargaining Agreement will be counted as time worked.

### SECTION 3. SUNDAY WORK.

An employee shall be paid double (2x) time for all hours worked on Sunday.

### SECTION 4.  NOTICE OF OVERTIME.:

Each Employer agrees to give reasonable notice for overtime work.

### SECTION 5.  WORK SCHEDULES.:

Each Employer shall have the right to set work schedules to assure efficiency and to perform effectively, and the employees shall receive reasonable notice of a change in schedule.  In setting a schedule or filling an opening on a schedule, where two (2) or more employees desire to work, preference shall be given to the senior employee, provided the senior employee has comparable training, experience, skill, and ability to effectively perform the necessary duties.

4

**SECTION 6. REPORTING PAY.**

An employee who is scheduled or notified to report and who does report for work shall be provided with and assigned to at least a minimum of four (4) hours of work. In the event such work is not available, the employee shall be released from duty and credited with a reporting allowance of four (4) times his regular hourly rate of pay. This provision shall not be applicable in the event any condition occurs which is clearly beyond the control of the Employer.

## ARTICLE VI - PAID HOLIDAYS

**SECTION 1. HOLIDAYS DESIGNATED.**

Employees with thirty (30) days or more of service with the Employer shall be granted eight (8) hours of holiday pay at their current hourly rate (including shift differential) on the holidays as set forth in the Employer's Addendum.

**SECTION 2. ELIGIBILITY.**

To receive pay for a holiday not worked, an employee must work on the work day preceding and following the holiday, if he is scheduled to do so, unless otherwise excused. Employees on authorized vacation shall nevertheless be entitled to holiday pay if the holiday falls during their vacation period. Employees shall not lose their holiday pay if they have permission from management to be absent on the day preceding or following the holiday. Days absent before or after a holiday shall be considered as time worked for the purpose of this Agreement if absence is due to any one of the following reasons:

1.      Bonafide sickness or injury

5

2.     Death or funeral in the immediate family.

3.     When an employee reports for work and is sent home for lack of work.

4.     When an employee is required to report for jury duty.

5.     When an employee is notified by the Employer not to report for work on the last scheduled work day prior to or the next scheduled work day after such holiday.

In determining overtime, the holiday shall be counted as a day worked, except when such holiday falls outside the normally scheduled workweek.

**SECTION 3. HOLIDAY PAY.:**

Holiday pay shall be paid based upon the employee's normal schedule of hours for the day on which the holiday is celebrated.

**SECTION 4. PAID HOLIDAY.:**

An employee who works on a paid holiday shall be compensated at the rate of time and one-half for all hours worked on the holiday and shall receive the employee's regular holiday pay.

**SECTION 5. LAYOFF OR LEAVES.**

Employees shall not lose their holiday pay if they have been absent on either or both of the regularly scheduled work days before and after the day on which the holiday is celebrated by reason of either a layoff or leave of absence for illness that began not earlier than fifteen (15) working days prior to the date on which the holiday is celebrated and is reasonably expected to end not later than fifteen (15) working days following the date on which the holiday was celebrated, and further provided that such employee worked both his last scheduled work day prior to the leave of absence or layoff and his first scheduled work day following the termination of the leave of absence or layoff.

6

PL207

# ARTICLE VII - VACATIONS

### SECTION 1. ELIGIBILITY.

Each employee shall be eligible for vacation benefits in accordance with the schedule as set forth in the Employer's Addendum

To be eligible for full vacation benefits as outlined above, the employee must have performed a minimum of 1500 hours of straight time work during the preceding year. The preceding year shall be defined as the employee's anniversary date of employment from one year to the next.

(a) For purpose of computing hourly eligibility, employees who have been absent from work due to a hospitalized illness or accident, or due to an occupational illness or injury, shall be credited, as time worked, for such absence, up to a maximum of 173 hours. For the purpose of computing hours for vacation eligibility any paid time off pursuant to the Collective Bargaining Agreement will be counted as time worked.

(b) All time lost due to a lack of work, lay off, attendance at Union conventions, steward's seminar, grievances or other approved Union business, for purposes of vacation shall be computed as hours worked.

### SECTION 2. VACATION PAY.

Employees shall receive as vacation pay for each week of vacation to which they are entitled one (1) week's pay at their regular weekly or hourly rate of pay, whichever is applicable. In the event an Employer's Recognition Agreement provides that part-time employees are covered by this Agreement, then such part-time employees shall receive pro-rata vacation benefits if so provided by the Employer's Addendum. Vacation pay shall be payable on the last pay day prior to the employee

7

PL208

taking his vacation. Vacations shall be taken at times mutually agreed upon by employees and the Employer, with due consideration being given to the requests of the employees and the operating needs of the Employer. In the event of a conflict of vacation periods requested by employees, preference for available periods shall be given to the most senior employee.

### SECTION 3. VACATION PAY IN EVENT OF TERMINATION.

In the event of termination of employment for any reason whatsoever, an employee shall receive prorated vacation pay based on hours worked.

### ARTICLE VIII - GRIEVANCE PROCEDURE

### SECTION 1. DEFINITION.

For the purposes of this Agreement, a grievance is a difference in opinion with respect to the meaning and application of the terms and conditions of this Agreement. Grievances shall be taken up in the following manner:

**FIRST:** Any employee who has a grievance shall first discuss it with his Supervisor.

**SECOND:** If the grievance is not settled in the first step, and the employee wishes to appeal, the grievance shall be presented to the Union Steward and the Supervisor.

**THIRD:** If not satisfactorily settled in the foregoing step, the grievance is to be referred to the Business Agent of the Union who shall have the right to present the grievance to the President of the Employer or his duly authorized representatives.

**FOURTH:** If the matter is not settled in the foregoing step, the Union at its discretion may refer such matter to a Joint Committee composed of a representative of the Union and a representative of the Association. Unless extended by mutual

8

agreement of the Employer and Union such referral shall be made within ten (10) calendar days of when the Step 3 answer was given. The Joint Committee shall meet at a time and place as it shall determine and shall render its decision or award within three (3) days after the close of any hearing it shall hold. The Employer and the Union may require the grievant to be present at the Joint Committee hearing. The Joint Committee may adopt such rules of procedure as it determines necessary in its sole discretion and shall have the power to require the production from an Employer or the employee of any and all records it determines are necessary to competently conduct a hearing. If the Joint Committee resolves the dispute by a majority vote of those present and voting, then such decision shall be final and binding upon the Union, Employer and employee. If the Joint Committee is deadlocked on the disposition of the dispute or cannot otherwise satisfactorily resolve the matter, the Union may elect to arbitrate within fifteen (15) calendar days of receipt of the Joint Committee decision by providing written notice to the Association.

**FIFTH:** Grievances that are not satisfactorily settled in accordance with the foregoing procedure may be referred by either party to an impartial arbitrator agreed upon by the Association and the Union. In the event the parties are unable to agree upon an arbitrator within ten (10) days, the matter may be referred to the American Arbitration Association (AAA) for the selection of an arbitrator. The dispute shall be processed and heard under AAA's "Expedited Labor Arbitration Rules" at AAA"s Chicago location unless otherwise mutually agreed to by the Union and the Association. The decision of such arbitrator shall be final and binding upon the parties. It is agreed, however, that an arbitrator shall have no right to add to, take from

9

or modify any of the provisions of this Agreement. The fee and expenses of the arbitrator shall be divided equally between the parties except, in those cases where the arbitration is a result of a disagreement over the interpretation or implementation of the terms contained in those Articles governing the Employer's participation in the Midwest Pension Plan or the Central States Joint Board Health and Welfare Trust Fund. In these cases the party which the arbitrator has ruled against shall bear the entire cost of the arbitrators fees and expenses.

### SECTION 2. ARBITRATION.

If the grievance is settled following the filing with the American Arbitration Association (AAA), but prior to the arbitration hearing, all costs of the American Arbitration Association (AAA) and any arbitrator fees incurred by the party initiating the filing shall be paid for by the other party.

### SECTION 3. LIMITATIONS: TIME AND PLACE.

(a)     Any working time that is lost under this procedure for the presentation of grievances At the Employer's place of business shall be paid for by the Employer at the employee's hourly rate. The Employer will designate a time and place each week during which grievances may be presented. Emergency grievances may be presented at any time.

## ARTICLE IX - SENIORITY

### SECTION 1. LEAVE OF ABSENCE.

Employees shall have the right to a leave of absence on account of illness, accident, other justifiable reasons, or as provided by law. The Employer shall give

10

consideration to the circumstances of each request for leave, and shall have the right to determine the duration of such leave of absence. Leaves of absence shall not be denied for jury service, death in family, illness in the immediate family, or attendance at legal proceedings or as otherwise provided by law. Leaves of absence shall not be granted for periods in excess of thirty days without mutual agreement of the parties hereto unless otherwise provided by law. Seniority shall continue to accumulate during any leave of absence. Employees cannot be required to take other available paid leave in lieu of a leave of absence.

Employees shall be entitled to up to twelve (12) weeks of leave under the Family and Medical Leave Act so long as the employee has not taken any Family or Medical Leave during the preceding 12 months. Any Family and Medical Leave taken during the preceding 12 months shall be deducted from the 12 weeks of leave to which the employee is entitled. An employee who requests family or Medical Leave cannot be transferred to another position without the approval of the Union.

At the time any previously granted leave expires, each individual case if requested shall be reviewed in order to determine whether the leave shall be extended or terminated.

Absent extraordinary conditions, an employee must report to work within forty-eight (48) hours upon expiration of the leave of absence. Failure to report for work within the prescribed period of time shall result in the forfeiture of all seniority rights and privileges under this Agreement.

11

PL212

## SECTION 2. COMMENCEMENT.

The seniority rights of each employee shall date from his last regular hiring date.

## SECTION 3. TERMINATION.

An employee shall lose all seniority rights if:

(a)    He quits voluntarily and is not reinstated within five (5) days; or

(b)    He has been discharged and has not filed a grievance within five (5) days. The seniority status of an individual who has been discharged and files a grievance in connection with such discharge will be decided as part of his case; or

(c)    He has been absent from work for three (3) successive working days without notifying his Employer; or

(d)    He fails to report for work within three (3) working days after being notified by registered or certified mail at his last known address to report for work after a layoff; or

(e)    He has been laid off for lack of work or has been absent on account of illness or injury not suffered on the job, and such lay-off or absence has continued for a period of six months (6) plus (1) month for each full year of seniority at the date of layoff or beginning of absence to a maximum of two (2) years. Seniority shall accumulate during such absence.

(f)    He fails to report for work within forty-eight (48) hours upon termination of a disciplinary layoff.

## SECTION 4. PROBATIONARY EMPLOYEES.

New employees and those hired after a break in continuity of service will be regarded as probationary employees for the first thirty (30) days of employment and will receive no continuous service credit during such period. Probationary employees

12

may be laid off or discharged as exclusively determined by the employer, provided that this provision will not be used for purposes of discrimination because of membership in the Union. Probationary employees continued in the service of the Employer subsequent to the thirty (30) days from date of original hiring shall receive full continuous service credit from date of original hiring.

### SECTION 5. APPLICATION.

The parties hereto recognize that promotional opportunity and job security in event of promotions, decrease of forces and rehirings after layoffs should increase in proportion to length of continuous service and that in the administration of this Section the intent will be wherever practicable that the more senior employee will receive the promotion or job security.

### SECTION 6. SENIORITY LIST.

A complete record of the names arranged in order of seniority, of all employees who have not lost their seniority rights, shall be maintained by the Employer and the Association. A copy of such list shall be submitted to the Union office at six (6) months intervals and also shall be made available to Union representatives and the Union Stewards whenever any of said parties makes a request for same.

### SECTION 7. MATERNITY LEAVE OF ABSENCE.

A Maternity leave of absence shall be granted based on current Federal Laws and regulations pertaining thereto. It is understood that in the granting of a maternity leave, no female employee can be discriminated against and any policy applicable to normal leaves of absences shall compel the same application with respect to the granting of maternity leaves.

13

### SECTION 8. SENIORITY APPLICATION.

In all applications of seniority under this Agreement, where present training, knowledge, work experience, skill and ability to perform the available work and physical fitness are relatively equal, seniority shall be the deciding factor. Disputes, involving seniority application shall be subject to the grievance procedure.

### SECTION 9. JOB OPPORTUNITIES.

Wherever there is a job opening the Employer shall notify employees for a period of forty-eight (48) hours. An employee desiring to apply for an opening must make his application within the forty-eight (48) hour period. If no employee desires the job, the Employer shall be free to take whatever action it deems appropriate. If one (1) or more employees apply for such opening, the Employer shall be required to use its best efforts to give said job to the employee with the most seniority, consistent with skill and ability to perform the job, provided such employee is qualified.

## ARTICLE X – POLITICAL ACTION COMMITTEE

The Association hereby agrees to honor Central States Joint Board Political Action Committee contribution deduction authorizations from an Employer's employee who are union members

## ARTICLE XI - MISCELLANEOUS PROVISIONS

### SECTION 1. UNION ACCESS.

The Employer agrees to provide the Union with an area, for news and notices relative to Union business or activities. Union Representatives shall have access to

14

the premises to check grievances, provide notices, and conduct normal Union business.

### SECTION 2. WORK BY SUPERVISORS.

Supervisors are primarily to be used for supervision and instruction and are not ordinarily or generally to be used for the purpose of performing work so as to displace bargaining unit employees. This shall not be construed, however to prevent the temporary performance of work by supervisors in cases of absenteeism, instruction, experimentation, temporary fill-in basis, or emergencies, as long as the performance of such work does not cause the displacement or bargaining unit personnel nor deprive employees covered by this Agreement of normal overtime opportunities.

### SECTION 3. DESIGNATED UNION REPRESENTATIVE.

During the term of this Agreement, the Union agrees to limit its designated representatives within the shop to those necessary to conduct Union business.

### SECTION 4. NOTICES.

Whenever under this Agreement a provision is made for notice of any kind or where it is deemed desirable or necessary by either party to give notice to the other, it shall be deemed sufficient notice and service thereof if such notice is sent by registered or certified mail, and if given by the Employer or Association, it shall be addressed to the Union at 1950 West Erie Street Chicago, Illinois 60622, and if given by the Union shall be addressed to the Association at: 1116 E Oakland Ave.

Bloomington, Il 61701. If given by the Union to the Employer, it shall be addressed to the Employer at the address set forth in the Employer's Addendum.

15

Either party by like notice may change the address to which such notice shall be sent. Notice given in accordance with these provisions shall be effective when mailed.

### SECTION 5.  CHANGE IN LOCATION ET. AL.

In the event that the Employer's facility and/or any of its operations are moved, or the name is changed by any of the owners, this contract between the parties shall continue in effect until its expiration date, and all employees shall be offered the opportunity to transfer.

### SECTION 6.  PAY FOR INJURY IN THE COURSE OF EMPLOYMENT.

Any employee covered by this Agreement who is injured during the course of his employment shall be paid his applicable hourly rate up to a maximum of eight (8) hours for the first day the accident occurs, provided he is unable to work that day based on the advice of the a physician.

### SECTION 7.  NO LOSS OF EXISTING BENEFITS.

All rights privileges and benefits heretofore enjoyed by employees shall be accorded such employees.  No existing benefits may be dropped nor shall there be any substitution of benefits unless the Employer and the Union agree.

### SECTION 8.  SUCCESSORS & ASSIGNS.

This Agreement shall be binding upon the parties hereto, the members thereof, and the heirs, executors, administrators, legal representatives, successors and assigns of each.

### SECTION 9.  SAFETY AND HEALTH.

The Employer shall maintain safe and healthful working conditions for the employees in the bargaining unit.

PL217

### SECTION 10. NON-DISCRIMINATION.

There shall continue to be no discrimination in the employment policies and practices of the Association or any Employer against any employee on account of race, creed, sex, age, color, national origin, religion or ancestry. The Association, Employers and Union further agree to comply with State and Federal statutes as to related wages, hours or other terms or conditions of employment with respect to disabled individuals.

### SECTION 11. JURY DUTY PAY.

All employees with thirty (30) days or more of service with the Employer and who are required to serve on a jury shall be paid an amount equal to their regular pay less any jury duty pay received, up to eighty (80) hours (or two weeks if salaried paid), per calendar year.

### SECTION 12. CONDOLENCE PAY.

All employees with thirty (30) days or more of service with the Employer shall be granted three (3) days Condolence Pay in the event of a death in the immediate family. The immediate family shall be defined as: Mother, Father, Spouse, Children, Brother, Sister, Grandparents, Mother-in-law, and Father-in-law, Grandmother and Grandfather. The Employer may request reasonable proof of eligibility.

### SECTION 13. NATIONAL ELECTION DAYS.

On National Elections the Employer will grant two (2) hours off with pay to allow eligible employees to vote.

PL218

### SECTION 14. GRACE PERIOD.

Employees who are late for work and punch in no later than the fifth minute after starting time shall be paid from the starting time.

### SECTION 15. TRANSFER OUT OF BARGAINING UNIT.

Any employee who has heretofore or is hereafter transferred or promoted to a position outside of the bargaining unit who is re-transferred to a position in the bargaining unit within one (1) year thereafter shall have seniority credit for all of his service with the Employer, including his service out of the bargaining unit. No such employee may, upon re-transfer into the bargaining unit, displace a non-probationary employee by virtue of his accumulated seniority credit while outside the bargaining unit.

### SECTION 16. GENDER CLAUSE.

Whenever in this Agreement the masculine gender is used, it shall be deemed to include the feminine gender as well, and singular usage shall include plural usage and vice versa, all as the context shall require.

18

## ARTICLE XII - HEALTH AND WELFARE FUND

**SECTION 1.** The Employer shall make the monthly contributions to the Central States Joint Board Health and Welfare Trust Fund (Fund) for each Employee in the active employ of the Employer with thirty (30) calendar days or more of service, (except as modified in Section 9(b) and Section (c) of this Article).

**SECTION 2.** The Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board, Health & Welfare Trust Fund, an amount per month as set forth in the Employer's Addendum.

**SECTION 3.** Effective January 1 of each year, the Employer shall pay on behalf of each eligible Employee as described in Section 1 into the Central States Joint Board, Health and Welfare Trust Fund an amount that shall not exceed the previous year's rate by more than 22%. The actual contribution level shall be determined by the Central States Joint Board Health & Welfare Fund after completion of an actuarial study of the Fund.

If the contribution level in any year is greater than the amount to be paid by the Employer as set forth above, then the difference in cost shall be borne by each covered Employee.

The Employer shall be notified in writing of the monthly contribution actuarially determined not later than 60 days preceding January 1st of each year.

**SECTION 4.** The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide health, welfare, death and such other benefits as permitted by said Trust Agreement, as amended, from time to time, and by Section

19

PL220

302(c) of the Labor Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

SECTION 5.  The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust), pursuant to Collective Bargaining Agreements between certain Employers and the Union.

SECTION 6.  (a)  The Union represents that the Trust is lawful and is qualified under all applicable provisions of the Internal Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the Fund loses its qualification under the Internal Revenue Code.

(b)  The Employer's sole liability shall be for the payment of the monthly contributions set forth in this Article and in no way guarantees payment of the benefits established by Trust Fund nor the solvency of the Fund.

(c)  The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

SECTION 7.  The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

SECTION 8.  The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time.  The Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility, the right to participate in benefits of the Fund,

20

time, method of payment, payment during periods of Employee illness or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

SECTION 9. The Employer payments to the Fund shall be as follows:

(a)    The amount per Employee per month shall be paid for each Employee covered by this Agreement by the 10th of the month and by the 10th of each month thereafter, for each Employee who has received at least eight (8) hours of compensation for that month, including the month in which an employee terminates active employment.

(b)    If a covered Employee is absent because of non occupational illness or injury, the Employer shall pay the required payment for a period of two (2) additional month(s) following the month in which the illness or injury occurred.

(c)    If a covered Employee is absent because of occupational illness or injury, the Employer shall pay the required payment for a period of three (3) month(s) following the month in which the occupational illness or injury occurred.

(d)    If a covered Employee is absent due to a leave of absence under the Family and Medical Leave Act, the Employer shall pay the required payment, including any Employee contributions, for the duration of the leave.  Once the Employee returns from a leave, the Employer can deduct from the Employee's paycheck, on a month for month basis, the amount of the Employee contributions that it has paid.

21

**SECTION 10.** Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Health & Welfare Fund, as required under this Article or the rules and regulations of the Fund then the Employer shall be responsible for any losses of any Health & Welfare benefits resulting thereby and agrees to make full reimbursement to the Fund for all costs and attorneys fees incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages due the Fund and any other amounts that may be due as provided for in ERISA.

**SECTION 11.** No payment of credits, due to contributions made by the Employer for an ineligible Employee, shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

## ARTICLE XIII - SICK & ACCIDENT BENEFITS

If provided in its Addendum, the Employer shall provide, at no cost to its employees, a Sick and Accident policy which will provide a benefit equal to two-third (2/3) of current wages per week for twenty (26) weeks, for employees with thirty (30) days or more of service with the Employer, and to commence with the first (1st) day of an accident, the eighth (8th) day of illness, or first (1st) day employee enters the hospital.

## ARTICLE XIV - LIFE INSURANCE

The Employer shall provide, at no cost to employees, a Life Insurance Benefit of equal to the amount set forth in the Employer's Addendum, to each employee with thirty (30) days, or more of service.

PL223

## ARTICLE XV - RETIREMENT BENEFITS

**SECTION 1. BENEFITS.:**

Each Employer shall, if required by such Employer's Addendum, maintain such retirement plan as is specified in such Employer's addendum.

**SECTION 2. PLAN OF BENEFITS.:**

Subject to the limitations set forth in a Employer's Addendum, any Employer with a retirement plan may draft, modify or terminate the plan in its sole discretion. In the event the Employer is participating in the Union's severance plan such Employer shall follow the rules set forth herein.

**SECTION 3. RETIREMENT BENEFITS THE SUBJECT OF GOOD FAITH BARGAINING:**

Retirement benefits have been the subject of good faith bargaining between the parties with respect to each Employer and its employees.

## ARTICLE XVI - PENSION FUND

**SECTION 1.** In the event the Employer's addendum requires contributions to the Midwest Pension Fund, the provisions of this Article shall be applicable. The Employer shall make monthly contributions to the Midwest Pension Plan (Fund) for each Employee in the active employ of the Employer with thirty (30) calendar days of service in the amount set forth in the Employer's Addendum.

**SECTION 2.** The Fund shall use these payments for purposes permitted under the Trust Agreement and to provide Pension, death and such other benefits as permitted by said Trust Agreement, as amended, from time to time, and by Section

23

302 (c) for the Labor Management and Relations Act of 1947 and the Employee Retirement Income Security Act of 1974.

SECTION 3.   The Fund is an irrevocable Trust heretofore created by an Agreement and Declaration of Trust (Trust Agreement), pursuant to Collective Bargaining Agreements between certain Employers and the Union.

SECTION 4.        **(a)**     The Union represents that the Trust Fund is lawful and is qualified under all applicable provisions of the Internal Revenue Code, so that all contributions by the Employer will be deductible for income tax purposes; and the obligation of the Employer to contribute to the Trust shall cease at any time the Fund loses its qualification under the Internal Revenue Code.

**(b)**     The Employer's sole liability shall be for the payment of the monthly contributions set forth in this Article and in no way guarantees payment of the benefits established by Trust Fund nor the solvency of the Fund.

**(c)**     The Union agrees to hold the Employer harmless against any liability arising from the Employer's compliance with this Article.

SECTION 5.   The Union represents that this Fund is administered jointly by Trustees equal in number appointed by the Union and appointed by the Employers who contribute to the Fund.

SECTION 6.   The Employer agrees to be bound by the Agreement and Declaration of Trust creating the Fund, as amended from time to time the Trustees of the Fund shall have the sole power (a) to construe the provisions of the Trust Agreement and rules and regulations and all terms used therein, and (b) to determine all disputes with respect to eligibility, the right to participate in benefits of the Fund,

24

time, method of payment, payment during periods of Employee illness or disability, methods of enforcement of payment and related matters, and any construction adopted and any determination made by the Trustees in good faith shall be final and binding upon all Employers, Employees, participants, legal representatives, dependents, relatives and all persons and parties.

SECTION 7. The Employer's payments to the Fund shall be as follows: The amount per Employee per month shall be paid for each Employee covered by this Agreement, by the 10th of the month next following the end of the Employee's thirtieth (30th) calendar day of service and by the 10th each month thereafter, for each Employee receiving at least forty (40) hours of compensation during the calendar month for which contribution are being made.

SECTION 8. Whenever the Trustees of the Fund determine that the Employer is delinquent in making payments to the Midwest Pension Plan, as required under this Article or the rules and regulations of the Fund, then the Employer shall responsible for any losses of any Pension benefits resulting thereby and agrees to make full reimbursement to the Fund for all costs, including attorneys fees incurred in the collection of said delinquencies or the enforcement of this Article in addition to liquidated damages due the Fund and any other amounts that may be due as provided for in ERISA.

SECTION 9. No payment of credits, due to contributions made by the Employer for an ineligible Employee, shall be allowed if claim for such credit is not made on or prior to the last day of the month for which the report containing the error was due and payable.

25

PL226

## ARTICLE XVII - UNION PAYROLL INSPECTION

The Union shall have the right to examine the payroll records of the Employer to determine that there has been compliance with the terms contained in the Bargaining Agreement which are concerned with the remittance or payment of Union dues, initiation fees and assessments.

The Union shall be required to give fourteen (14) days' notice of such examination.

The examination shall be conducted by an accountant who will be retained by the Union. If no delinquency is discovered, none of the auditing costs involved shall be borne by the Employer, however, if the audit discloses that the Employer is delinquent in its obligations under this Agreement, the Employer shall pay all costs of the audit.

## ARTICLE XIX – STWARDS AND OFFICERS SEMINAR

The parties mutually agree that the issues and problem facing labor and management require great attention. In the interest of educating the steward body and/or officers of the Local who are employees of the Employer, the Employer agrees to allow up to one (5) day's per year with pay to no more than one (1) steward and/or officers of the Local, to attend professionally staffed seminars or conventions sponsored by the Union and or its affiliated International Union and/or Joint Board. The Union will notify the Association of the name of the employee participating thirty (30) days in advance of the seminar or conventions and will also certify their attendance.

## ARTICLE XVIII - LIQUIDATED DAMAGES

In lieu of interest, beginning with the eleventh (11th) day of the month in which the monies are due, there shall be a liquidated damages of one and one half percent (1-

26

½%) per month, or part thereof, on all monies due, including, but not limited to, dues and initiations fees. With respect to dues and initiation fees, it is the understanding of the parties that the liquidated damages shall compensate the Union for the Employer's failure to timely send the Union the dues and initiation fees which it had deducted, or should have deducted, from the employee's pay. The parties agree that the actual loss to the Union from the Employer's failure to timely comply with its obligations under this Agreement is difficult or impossible to calculate with precision and agree to these liquidated damages as a good faith estimate of the losses suffered. .

If, as a result of violation(s) of this Agreement it is necessary for the Union to institute court action, the Employer shall pay any accountants' and attorneys' fees incurred by the Union, plus cost of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XIX NO STRIKES OR LOCKOUTS

### SECTION 1. NO AUTHORIZED STRIKES, ETC.

The Union agrees that it shall not authorize any strike, work stoppage, slowdown or other intentional interference with work, but on the contrary will, upon notice from the Employer, take the affirmative action set forth in this Agreement to prevent such prohibited activity.

### SECTION 2. PENALTY FOR VIOLATION.

Any employees participating in such prohibited activity shall be subject to severe discipline, including discharge, within the discretion of the Employer. In the event an employee is disciplined or discharged for engaging in such prohibited

27

activity, the Union will not support the employee in the filing or processing of any grievance or any proceeding or suit.

### SECTION 3. NOTICE AFTER VIOLATION.

In the event the Employer notifies the Union that a prohibited activity has occurred, the Union will immediately take the following courses of action:

1.    Advise the Employer in writing that acts complained of by the Employer have not been authorized or sanctioned by the Union.

2.    Provide signed copies of the following notice to the Employer:

Employees of **Employer's Name**:

We have been advised by the Employer that the acts interfering with your work which are prohibited by our Collective Bargaining Agreement have occurred. If you are engaging in or have engaged in any such activity, you are hereby officially instructed to cease participation immediately and to resume normal operations. Your failure to resume operations may subject you to severe discipline, including discharge. All Union officials and members employed by this Employer are being sent a copy of this notice and no one is authorized to give a contrary instruction.

LOCAL UNION NAME
BY_____
           President

3.    Mail a copy of the above notice, duly signed, to each member of the bargaining unit or to members of the bargaining unit specified by the Employer.

Compliance by the Union with the above provisions in good faith will preclude the Union and its agents and officers from liability for damages.

### SECTION 4. NO LOCKOUT.

The Association will not lock out employees during the term of this Agreement.

A layoff or shutdown for business reasons shall not be construed as a lockout.

PL229

**SECTION 5. DELINQUENCIES.**

Whenever the Union, in its sole discretion determines that the Employer is at least three (3) months delinquent in contributions to the Health & Welfare Fund or the Pension Fund or the payment of union dues or initiation fees to the Union, and has made proper notification by certified mail and has given the Employer two (2) weeks to make up the delinquencies, the Union may engage in a strike, work stoppage, sympathetic strike, boycott, picketing or other economic action to enforce payment. This section shall not be subject to and is specifically excluded from the grievance and arbitration procedures of this Agreement. The Employer shall be responsible for the loss of any Health & Welfare benefits resulting from its delinquency.

## ARTICLE XX- WAGES

**SECTION 1. WAGE SCHEDULE.:**

Each Employer shall establish and maintain a wage schedule which provides minimum rates as set forth in its Employer Addendum. Thereafter, employees shall be individually reviewed no less than annually, based upon an objective evaluation of the employee's performance. The Union and employee shall be advised of the wage adjustment and the basis for same.

**SECTION 2. WAGE DEDUCTIONS.:**

To the extent permitted by law, each Employer agrees to deduct from an employee's pay, upon written authorization of such employee, the employee's dues, initiation fee or other deductions properly authorized in writing by the employee and

29

forward said monies monthly to the Union or other party from whom deductions have been made, together with a list of names and amounts for whom deductions have been made.

### SECTION 3. WAGE INCREASE:

In connection with Section 1 above, a three percent (3%) or greater wage increase shall be given by each Employer to its employees on or before the one year anniversary of the Employer's Addendum; a three (3%) or greater wage increase shall be given by each Employer to its employees on or before the second anniversary of the Employer's Addendum; and a further three (3%) or greater wage increase shall be given by each Employer to its employees on or before the third anniversary of the Employer's Addendum.

### SECTION 4. MERIT INCREASE OR BONUS:

An Employer is not obligated to provide any merit increase or bonus. However, nothing in this Agreement shall limit the Employer's right to give a merit increase or bonus to any of its employees in the Employer's sole discretion.

## ARTICLE XXI - LABOR MANAGEMENT LAW

### SECTION 1. LABOR MANAGEMENT LAW.

The parties recognize that there are many problems and unanswered legal questions raised by the Labor Management Reporting and Disclosure Act of 1959. Accordingly, if any of the provisions of this Agreement are adjudicated to be illegal, unlawful or in violation of existing or future laws, no other portion, provision or article of this Agreement shall be invalidated thereby nor shall such adjudication relieve either

30

of the parties hereto from the rights or liabilities hereunder, or limit their rights or liabilities hereunder, or limit their rights or liabilities except insofar as the same are made unlawful, illegal or in violation of the law.

**SECTION 2. SAVINGS CLAUSE.**

In the event that any federal, state or municipal law or any rule or regulation of any governmental agency shall render unenforceable or compel the cancellation or modification of any provision of this Agreement during the term of this Agreement, such provision shall thereupon become inoperative and the Association and the Union shall within ten (10) days thereafter meet for the purpose of negotiating the changes made necessary by such applicable federal or state law or government regulation, failing agreement on which within ten (10) days, the matter may be submitted to the American Arbitration Association as a dispute by either party, and the arbitrator so selected shall in his award include substitute lawful and enforceable provisions for those which are unlawful or unenforceable, which most closely approximate the intent and purpose desired to be achieved by the parties in such provision or provisions.

## ARTICLE XXII– MANAGEMENT RIGHTS

It is agreed that the Union and the employees will cooperate with the Employer within the obligations of this Agreement to liberally construe this Agreement to facilitate the efficient and flexible operation of an Employer's business. The Union recognizes that certain rights, powers, and responsibilities belong solely to and are exclusively vested in the Employer except as they may be subject to a specific obligation of this Agreement. Among these rights, powers, and responsibilities, but

31

not wholly inclusive, are all matters concerning or related to the management of the business administration thereof, and the direction of the working forces, including (but not limited to) the right to discipline, suspend, or discharge for cause; to lay off for lack of work or for any other legitimate reason; to hire, classify, transfer, assign work, promote, demote, or recall; to make and enforce reasonable rules and regulations; to determine the products, processes, and extent of the business or production; to determine the types and quantities of machinery, equipment and materials to be used; to determine the nature, extent, duration, character and method of operation, including the right to contract out, subcontract or to lease temporary employees from an outside company(ies), but only to cover short term fluctuations in the workforce; to determine the amount, utilization, and kind of personnel and quality and quantity of workmanship and work required to insure maximum mobility, flexibility, and efficiency of operations; to terminate, merge, consolidate, sell or transfer its business or any part thereof except as expressly abridged by a specific provision of this Agreement.

## <u>ARTICLE XXIII - TERMINATION</u>

This Agreement, when signed by a duly authorized officer of the Union and the Association, shall remain in full force and effect until _____, and shall automatically be renewed on the same terms and conditions for consecutive one (1) year periods thereafter unless sixty (60) days prior to the expiration of this Agreement, or any extension thereof, either party gives written notice to the other party of termination or modification of this Agreement.

32

## ARTICLE XXIII - TERMINATION

This Agreement, when signed by a duly authorized officer of the Union and the Association, shall remain in full force and effect until _AUGUST 31, 2012_ , and shall automatically be renewed on the same terms and conditions for consecutive one (1) year periods thereafter unless sixty (60) days prior to the expiration of this Agreement, or any extension thereof, either party gives written notice to the other party of termination or modification of this Agreement.

**IN WITNESS WHEREOF,** the parties hereto have hereunto affixed their hands and seals as of the day and year first above written.

**UNION**                                         **ASSOCIATION**

BY_____    BY_____

BY_____    BY_____

BY_____    BY_____

BY_____    BY_____

33

PL234